IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA AGEE, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 15-CV-145-SMY-RJD |
| | ) |
| WALGREEN COMPANY, | ) |
| | ) |
|         Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Walgreen Company's ("Walgreens") motion for summary judgment (Doc. 69). For the following reasons, the motion is **GRANTED** in part and **DENIED** in part.

### Background

Plaintiff Lisa Agee began her employment with Walgreens in October 1994 at their distribution center in Mt. Vernon, Illinois. She was transferred to the Maintenance/Janitorial Department in August 2008 where David Strunk, Maintenance/Janitorial Function Manager was her immediate supervisor. Agee alleges that from the time of her transfer through July 2010, she was subjected to sexual harassment by Strunk including inappropriate comments, unwanted advances and implied requests for sexual favors in exchange for overtime assignments, which Agee refused.

Although the timing is unclear, Plaintiff alleges that she complained to the Maintenance Manager, Dan Magnus that Strunk was refusing to assign Plaintiff any overtime hours. Magnus advised Plaintiff that she should discuss the matter with Strunk.

In July 2010, one of Agee's coworkers, Maurya Gill, complained to the Human

Resources Manager, Mary Supplee, that Strunk had made inappropriate comments to her. Supplee conducted an investigation that included interviews with several employees, including Agee. On July 19, 2010, Agee and several other employees provided written statements to Supplee, alleging that Strunk had made inappropriate sexual comments to them. Strunk resigned the same day. Agee alleges that the day after she submitted her written statement, she was ostracized by her coworkers at Dan Magnus' direction. Agee filed a charge of sex discrimination and retaliation with the EEOC on November 2, 2010.[1]

On March 20, 2013, Agee fell off a ladder at Walgreens resulting in various injuries. She was approved for paid disability leave from March 28, 2013 through June 6, 2013 and returned to work with temporary restrictions on June 10, 2013. Agee resumed work at full duty on July 22, 2013, but went on leave again on August 8, 2013 due to an alleged mental condition associated with her injuries. Agee was approved for paid disability from August 16, 2013 through November 6, 2013. She was then approved for unpaid disability leave from November 7, 2013 to April 12, 2015.

Between April 11, 2014 and October 2, 2014, there were numerous phone calls, emails and in-person meetings between Agee and Walgreens officials to discuss whether there were any job openings that she could perform with or without accommodations. Agee was told that there were no open positions that fit her restrictions. She tested for the position of General Office Clerk on January 8, 2015 and failed. Agee then tested for the position of Supply Chain Inventory Clerk on February 10, 2015 and failed. On March 26, 2015, the position of Receiving Office Clerk became open. Agee tested for the position on April 7, 2015 and passed. She returned to work April 13, 2015.

Plaintiff's First Amended Complaint (Doc. 20) asserts three counts: Count I alleges

---

[1] Agee filed a Second Charge of Discrimination with the EEOC on February 16, 2015, adding a charge of disability discrimination.

sexual harassment under Title VII; Count II alleges that Agee was retaliated against in violation of Title VII for complaining about discrimination and harassment, including Walgreens' refusal to take corrective action for Strunk denying Plaintiff overtime opportunities; Count III alleges that Walgreens violated the Americans with Disabilities Act by failing to provide reasonable accommodations that would have allowed Agee to return to work earlier than she did.

## Discussion

Summary judgment is appropriate if the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no genuine issue of material fact. *Celotex Corp. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). "The evidence of the non-movant is to be believed, and all justified inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

### *Count I – Sex Discrimination and Sexual Harassment*

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998). If there is no "tangible employment action," the employer can raise the *Faragher/Ellerth* defense, which is comprised of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the Agee employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642–43 (7th Cir. 2000). The defense is only available if there is no tangible employment action.

While Walgreens does not directly address whether Plaintiff was subject to a tangible employment action, it argues that it exercised reasonable care to prevent and correct any harassing behavior by having a comprehensive anti-harassment policy, training employees about this policy, and promptly investigating the claims about Strunk, ending in his immediate resignation. Agee contends that she suffered a tangible employment action when she was ostracized by her coworkers at the direction of Magnus less than 24 hours after complaining to human resources. Agee further argues that, although Walgreens had an anti-harassment policy that she was aware of, she could not complain to her immediate supervisor because he was the perpetrator of the harassment. She concedes however, that under the policy, she had a choice of whom she could report her complaints to.

Agee's argument, offered in support of her sex discrimination and sexual harassment claim, that she suffered a "tangible employment action" fails. Agee conflates the alleged ostracization by her coworkers with a hostile work environment created by the sexual discrimination and harassment she was allegedly subjected to by Strunk. By her own allegations, her coworkers began to ostracize her *after* she gave her written statement on July 19, 2010 – the day Strunk resigned. As such, the alleged ostracization cannot be the basis for a tangible employment action to support her claims for sex discrimination and harassment based on Strunk's conduct, and Walgreens appropriately raises the *Faragher/Ellerth* defense.

However, Walgreens is not entitled to summary judgment on this issue. Material issues of fact remain for the jury's determination as to whether Walgreens exercised reasonable care to promptly prevent and correct sexual harassment by the manner in which it implemented its sexual harassment complaint procedure and whether Agee unreasonably failed to take advantage of any preventive or corrective measures offered by Walgreens. Agee testified in her deposition that she had previously complained to Magnus and his supervisor regarding overtime hours and

was told that she needed to respect the chain of command and take her complaints to her immediate supervisor. It will be left for the jury to decide whether under the relevant circumstances, Agee's failure to complain about Strunk's conduct prior to July 2010 was unreasonable. Accordingly, Walgreens' motion for summary judgment is denied as to Count I.

### *Count II – Retaliation*

To state a claim of retaliation under Title VII, Agee must establish, "(1) that she engaged in statutorily protected activity; (2) that her employer took an adverse employment action against her; and (3) that the protected activity and the adverse employment action are causally connected." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016).

Walgreens maintains that Agee never complained about Strunk or anyone else at Walgreens harassing her. Additionally, Walgreens argues that there is no evidence of any intent to retaliate against Agee. Agee argues that giving a witness statement and participating in the investigation was statutorily protected activity and that the suspicious timing of the alleged retaliation (employees ostracizing Agee at Magnus' direction) is sufficient to establish motive or intent.

It is unlawful to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C.A. § 2000e-3. Here, Agee's involvement in the investigation of Strunk's conduct constitutes protected activity under the statute.

"[R]etaliatory motive may be established through circumstantial evidence such as suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual" among other evidence. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014). Although, suspicious timing alone is "rarely enough" to create an inference of retaliatory motive. *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016). Agee

5

testified that she was ostracized by her coworkers at the direction of Magnus, within 24 hours of reporting Strunk's harassment. Given the immediacy of the alleged retaliation, a jury could reasonably conclude that Magnus' motive in directing employees to ostracize Agee was retaliatory and causally connected to Agee's involvement in the investigation. See *Id.* (finding two week gap between protected activity and retaliation sufficient in conjunction with other evidence); *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) (finding "a month short enough to reinforce an inference of retaliation"). Therefore, Walgreens' motion for summary judgment is denied as to Count II.

### *Count III – Disability Discrimination*

The Americans with Disabilities Act provides that employers shall not "discriminate against a qualified individual on the basis of disability," including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual[.]" 42 U.S.C. § 12112. A disabled employee is a "qualified individual" when "with or without reasonable accommodation, [the employee] can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To succeed on a failure to accommodate claim, Agee must establish that "(1) [she] is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).

Walgreens argues that, as a matter of law, they provided Agee with reasonable accommodations by approving 15 requests from Agee for leave of absence benefits covering 17 months, and placing her in a position for which she was qualified and that had duties she could perform with her restrictions. Agee counters that Walgreens failed to engage in the interactive process and failed to provide her with internal job postings, resulting in her not being placed in a

position as quickly as she should have been.

Medical leave of absence qualifies as a reasonable accommodation. See *Basith v. Cook Cty.*, 241 F.3d 919, 932 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(o)); *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Time off may be an apt accommodation for intermittent conditions."); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998) (Employee's second medical leave would have been a reasonable accommodation.) In *Basith*, the Seventh Circuit upheld the district court's ruling that the employee's medical leave of absence was a reasonable accommodation when the employer later created a special assignment for him that reallocated essential functions of the job. The court found that this constituted a reasonable accommodation even if the employee was able to perform the essential functions of a different position that the employee would have rather had.

Here, Walgreens approved Agee's 17 months of leave of absence benefits while the parties were engaged in an efforts to find another position that Agee could perform. The parties disagree as to whether Agee could have performed the essential functions of the maintenance janitor position. However, even if Agee were able to do so with or without accommodation, Walgreens reasonably accommodated Agee by providing leave of absence and eventually placing her in a position that she could perform.

Moreover, the record establishes that Walgreens did in fact engage in an interactive process to find a position for her. From April 2014 to April 2015, there were numerous phone calls, emails and in-person meetings between the parties to find a position that would fit within Agee's restrictions. Eventually, positions opened within Agee's restrictions and she was allowed to test for these positions. Although she was unsuccessful with the first two tests, she passed the third and was immediately placed in the position that she still holds today. Under these undisputed facts, Walgreens did not fail to reasonably accommodate Agee and did not fail to

engage in the interactive process to find a position that fit her restrictions. For these reasons, summary judgment is granted as to Count III. Plaintiff may proceed to trial on her claims for sexual discrimination and harassment (Count I) and retaliation (Count II).

**IT IS SO ORDERED.**

**DATED:  February 6, 2017**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
